IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE: | ) |
| | ) Chapter 7 |
| JEFFERY J. DUFFY | ) |
| DARCIA J. DUFFY, | ) Bankruptcy No. 11-00841 |
| | ) |
| Debtors. | ) |
| | ) |

**ORDER RE: REAFFIRMATION AGREEMENT**

This matter came before the Court on August 10, 2011 for hearing on Debtors' Reaffirmation Agreement with Branch Banking & Trust Company / Regional Acceptance Corp. Jeffery J. Duffy and Darcia J. Duffy appeared without counsel. After receiving statements from Debtors, this Court took the matter under advisement. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).

**STATEMENT OF THE CASE**

Debtors seek to reaffirm a debt securing their 2007 Dodge Ram pickup truck. The presumption of undue hardship arises under 11 U.S.C. § 524(m)(1). Debtors presented testimony of increased income and decreased expenses since they filed bankruptcy. The Court took this matter under advisement to consider whether to allow reaffirmation on an expensive vehicle with large monthly payments that will be made over a significant period of time. The Court finds that

Debtors have failed to rebut the presumption of undue hardship. The Court now denies reaffirmation of this high-cost item.

## FINDINGS OF FACT

Debtors filed for bankruptcy on April 14, 2011. Nearly two months before filing, Debtors purchased a 2007 Dodge Ram pickup truck for $26,935.49. Debtors seek to reaffirm the debt secured by the 2007 Dodge Ram pickup truck. The amount of the debt is $26,946.56, which is $11.07 more than the purchase price Debtors paid for the vehicle. The debt would be repaid at an annual fixed interest rate of 20.95%, with monthly payments of $665.86 for 69 months. According to Debtors, the market value of the vehicle is $19,350.00.[1]

Debtors stated that this truck is Jeffrey's primary vehicle, and he needs this vehicle to travel to and from work. Jeffrey works at Omega Cabinets, but he does not use the truck to haul carpentry tools or other work products or items. Jeffrey's prior vehicle was a 1997 Dodge Ram. Jeffrey informed the Court that Debtors sold the 1997 Dodge Ram because it required a lot of maintenance. According to Debtors' Statement of Financial Affairs, Debtors sold this truck to their son-in-law for $1,000 in February, 2011.

---

[1] Debtors' Reaffirmation Agreement Cover Sheet states $19,350.00 as a current market value. Debtors Reaffirmation Documents, Section E, states $26,946.56 as the current market value. Schedule B states $25,000.00 as the current value.

Debtors' Schedules I and J, and the reaffirmation agreement, show a monthly deficit of $350.54.  Debtors stated that the bankruptcy has relieved some of their liabilities.  Additionally, they are no longer supporting their son.  Jeffrey and Darcia both also reported increased incomes:  Darcia received a raise, and Jeffrey now works a part-time job in addition to his full-time job he had before the bankruptcy.  Debtors did not provide the Court any increased income amounts. Debtors further hope to refinance the debt in the near future. They must wait a certain amount of time before they are able to do so.  Debtors are current on their monthly loan payments.

## CONCLUSIONS OF LAW

As discussed below, this Court considered similar facts and issued a written ruling in In re Bartz, slip op. No. 10-01897, 2011 WL 671991 (Bankr. N.D. Iowa Feb. 17, 2011). The Court bases its analysis here on the same conclusions of law that were applied in that case.

One of the fundamental goals of the Bankruptcy Code is to provide debtors with a fresh start.  See Grogan v. Garner, 498 U.S. 279, 286-87 (1991) ("This Court has certainly acknowledged that a central purpose of the Code is to provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy 'a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting

debt.'") (citing Local Loan Co. v. Hunt, 292 U.S. 234, 244 (1934)). The Code effectuates the fresh start by granting the "honest but unfortunate debtor" a discharge of certain debts. Grogan, 498 U.S. at 286; In re Pickerel, 433 B.R. 679, 683 (Bankr. N.D. Ohio 2010). In this case, Debtors seek relief under chapter 7 of the Code. Section 727(a) provides that a court "shall grant the debtor a discharge" unless certain grounds exist that render debtor ineligible to receive a discharge. Regardless of whether or not an individual debtor is eligible to receive a discharge, § 523 lists specific types of debts that are not dischargeable.

If and when a discharge is entered in favor of the debtor, § 524(a)(2) provides that the discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived." Despite this protection, a debtor may voluntarily agree in writing to repay, or "reaffirm" a debt that would be dischargeable. Section 524(c) governs the enforceability of a reaffirmation agreement between the debtor and creditor. Section 524(c) allows a debtor to reaffirm an otherwise-dischargeable debt unless reaffirmation would pose an undue hardship on the debtor. In re Tarnowski, No. 08-02262, 2009 WL 424999 at *1 (Bankr. N.D. Iowa 2009) (citing In re Chim, 381 B.R. 191, 195 (Bankr. D. Md. 2008)). The Bankruptcy Code includes provisions aimed at ensuring that

reaffirming debtors do not fall victim to coercive and deceptive actions by creditors and to make sure "that debtors understand the consequences of entering into such agreements." Id. (citing In re Schmidt, 397 B.R. 481, 482 (Bankr. W.D. Mo. 2008)).  These include disclosures relating to the legal ramifications of reaffirmations.  See 11 U.S.C. § 524(k).

Reaffirming an obligation to repay a prepetition debt is contrary to the fresh start provisions of the Bankruptcy Code.  See, e.g., In re Jamo, 283 F.3d 392, 398 (1st Cir. 2002); In re Getzoff, 180 B.R. 572, 574 (B.A.P. 9th Cir. 1995); In re Reed, 403 B.R. 102, 104 (Bankr. N.D. Okla. 2009); Pickerel, 433 B.R. at 683.  Reaffirmation is an exception to the discharge provisions of the Code—an exception that is invoked by the debtor himself.  Jamo, 283 F.3d at 398.  As a result, courts must rigidly enforce the Code provisions governing the execution of reaffirmation agreements.  See, e.g., In re Grisham, 436 B.R. 896, 900 (Bankr. N.D. Tex. 2010); In re Golladay, 391 B.R. 417, 421 (Bankr. C.D. Ill. 2008).

If the debtor is not represented by an attorney during the course of negotiating the agreement, the court must hold a hearing to inform the debtor that the reaffirmation agreement is not required and describe the legal consequences of reaffirming debt.  11 U.S.C. § 524(d).  The court may deny an unrepresented debtor's reaffirmation agreement if it concludes that reaffirmation is not in the best interests of the debtor or poses an undue hardship.  11 U.S .C. § 524(c)(6).

The Bankruptcy Code specifically requires a hearing and court approval if the monthly payments on the reaffirmed debt exceed the debtor's net monthly income. 11 U.S.C. § 524(m)(1). In these circumstances, under the Code, a presumption exists that the reaffirmation agreement imposes an "undue hardship" to the debtor. Id. The debtor may rebut this presumption, in writing, by identifying alternative sources of income to the satisfaction of the court. Id. The debtor cannot overcome the presumption of undue hardship merely by showing that he needs a vehicle. In re Stevens, 365 B.R. 610, 612 (Bankr. E.D. Va. 2007).

Several courts have rejected reaffirmation agreements when the debtor failed to show that additional income is available to pay both existing monthly expenses and the reaffirmed debt. In re Payton, 338 B.R. 899, 904 (Bankr. D.N.M. 2006) (denying reaffirmation after finding that the debtor would be "underwater" by $314 per month); In re Husain, 364 B.R. 211, 217 (Bankr. E.D. Va. 2007) (finding additional income insufficient to overcome presumption when the debtor would still have a deficit of $3,000 per month).

"When determining whether a reaffirmation agreement imposes an undue hardship, there are several relevant factors a court may consider . . . ." In re Strong, 232 B.R. 921, 924 (Bankr. E.D. Tenn. 1999). Those factors include: "the terms of the debt to be reaffirmed, whether the goods that the debtor wishes to retain are necessary, the risk of repossession if the debtor decides not to reaffirm the debt,

and the replacement value of the goods compared to the amount of debt to be reaffirmed." Id. (emphasis added) (citing In re Melendez, 224 B.R. 252, 261 (Bankr. D. Mass. 1998). As this Court has previously noted: "The appropriate financial inquiry ascertains whether the debtors' expenses exceeded their income and whether the reaffirmed debt is secured by a necessary item." In re Miller, 2007 WL 2413012 at *1 (Bankr. N.D. Iowa 2007) (emphasis added) (citing In re Vargas, 257 B.R. 157, 166 (Bankr. D.N.H. 2001)). Courts "should not be in the business of approving reaffirmation agreements where the debt is something the Debtor cannot afford." In re Stillwell, 348 B.R. 578, 582 (Bankr. N.D. Okla. 2006).

This Court has several times denied debtors' attempts to reaffirm debts collateralized by security interest in luxury or high-cost items. See In re Honkomp, 416 B.R. 647 (Bankr. N.D. Iowa 2009); Tarnowski, 2009 WL 424999; Miller, 2007 WL 2413012; In re Vaupel, 2007 WL 2609786 (Bankr. N.D. Iowa 2007). In Tarnowski, the Court specifically noted that "although an automobile may be necessary for future employment, there is no showing made that a luxury car [BMW] is required." 2009 WL 424999 at *2 (emphasis added). The Court noted that in denying reaffirmation that debtors had "not shown this Court that they have exhausted the less expensive alternatives than reaffirming the debt on a luxury vehicle." Id.

As another court noted, it is not appropriate for debtors to reaffirm "their debt on these luxury items rather than following the expectation that 'when seeking bankruptcy relief, debtors may be expected to do some belt tightening, including, where necessary, foregoing the reaffirmation of those secured debts which are not reasonably necessary for the maintenance and support of the debtor and his family.'" In re Deutscher, 419 B.R. 42, 46 (Bankr. N.D. Ill. 2009) (emphasis added) (citing In re Harter, 397 B.R. 860, 864 (Bankr. N.D. Ohio 2008)). See also Brenneman, 397 B.R. at 874 ("Bankruptcy is meant to provide a debtor with a fresh start, but not a head start ... the reaffirmation process in a Chapter 7 bankruptcy was not meant to be used as a device by which debtors could retain unnecessary property to the detriment of their unsecured creditors.").

## ANALYSIS

This case closely resembles the facts Bartz. 2011 WL 671991 at *1. In Bartz, debtor sought to reaffirm a debt secured by a 2009 Chevrolet Silverado pickup truck. Id. The amount of the debt was $26,038.55. Id. The amount was to be repaid at an annual fixed interest rate of 7.99%, with monthly payments of $447.78 for 73 months. Id. Debtor was a carpenter/construction worker and testified that he needed the truck to carry his tools and to commute to work. Id. Debtor exceeded his monthly income by $321.86. Id. Additionally, debtor did not

show he had any equity in the vehicle.  Id.  This Court denied debtor's reaffirmation agreement.  Id. at *5-6.

In this case, Debtors' Schedules I and J reflected an itemization of monthly expenses exceeding their monthly income by $305.54.  Debtors testified that they no longer support their son and that both Darcia's and Jeffrey's income increased – Darcia received a raise and Jeffrey works a second job part-time.  It is this Court's understanding that this took place before Debtors filed their reaffirmation agreement.  As such, Debtors still reported a deficit of $350.54 per month in their reaffirmation agreement if this debt is reaffirmed.  Additionally, Debtors did not show they have any equity in the vehicle.  In fact, in the reaffirmation agreement, Debtors showed that they owe more on the truck than its purchase price.  One of the facts that most concerns this Court, however, is the interest rate of 20.95%.  As Debtors' Security Agreement and Disclosure Statement with Pat McGrath Chrysler Jeep Dodge discloses, Debtors will pay over $21,000 in interest alone.  Accordingly, this truck will cost the Debtors nearly $48,000 over the life of the loan.  While Debtors hope to refinance in the near future, this Court cannot rely on speculative or potential events to rebut the presumption of undue hardship.  See Schmidt, 397 B.R. at 485.  Furthermore, Debtors provided no evidence that they tried to look for a less expensive truck that can get Jeffrey from their home to his job.  See Tarnowski, 2009 WL 424999 at *2.

In Bartz, this Court stated that "certain kinds of assets may not normally be viewed as a luxury, but will acquire a luxury component by reason of their unusual character and [or] cost." Bartz, 2011 WL 671991 at *5 (citing In re Boyle, 412 B.R. 108, 113 (Bankr. W.D.N.Y. 2009)). As in Bartz, this Court concludes in this case that Debtors' 2007 Dodge Ram has crossed that line. Debtors have failed to rebut the presumption that reaffirmation of the debt in question will impose an undue hardship.

A court's endorsement of a reaffirmation agreement on a high-cost item is essentially an endorsement or approval of the retention of such items at the expense of unsecured creditors. This Court's denial of reaffirmation in situations as in this case is keeping with – and a less harsh sanction than – dismissal under § 707(b). Bartz, 2011 WL 671991 at *5.

**WHEREFORE**, approval of the Reaffirmation Agreement between Debtors and Branch Banking & Trust Company / Regional Acceptance Corp. is DENIED.

Dated and Entered:    September 15, 2011

_____
Thad J. Collins
U.S. Chief Bankruptcy Judge